UNITED STATES ex rel. CANFORA v. WILLIAMS, Immigration Com'r.

(District Court, S. D. New York. February 23, 1911.)

1. ALIENS (§ 53*)—WHO ARE—DEPORTATION.

The immigration acts as amended in 1903 (Act March 3, 1903, c. 1012, 32 Stat. 1213), prescribing the aliens liable to deportation as immigrants, applies to all aliens whether first arriving in the country or returning to the country after a temporary absence.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 53.*]

2. ALIENS (§ 54*)—DEPORTATION—PROCEEDINGS—POWERS OF IMMIGRATION OFFICIALS.

Under the immigration acts, the immigration officials have exclusive power to determine whether an alien shall be deported as liable to be-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

come a public charge, and. so long as the procedure prescribed by such acts and the rules established for their administration are substantially followed, the courts cannot interfere.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.*]

Habeas corpus by the United States, on the relation of Vincenzo Canfora, against William Williams, United States Commissioner of Immigration at the port of New York. Writ dismissed.

Philip S. Saitta, for relator.

Henry A. Wise, U. S. Atty., and Wolcott H. Pitkin, Asst. U. S. Atty.

HOLT, District Judge. This is a rehearing on a writ of habeas corpus granted to test the legality of the detention of Vincenzo Canfora, who is held under an order for his deportation. Canfora is an Italian 60 years old. He came to this country with his family in 1895. 16 years ago. He was early in life an engraver, and later a bookbinder, both of which are arts which usually require artistic skill and intelligence. He has a wife and six children, all of whom but one are now adults. About six years ago gangrene developed in his foot, which ultimately made necessary the amputation of his leg. Last summer he went to Italy to visit his mother. Shortly before his return, the commissioner of immigration received the following letter:

"G. Vicario, Editor, 243 Canal St. New York.

"Dec. 16/10.

"Hon. Commissary of Emigration, Ellis Island, N. Y.—Sir: I beg to inform you that on the S. S. Cincinnati due from Naples Monday next will arrive in New York, as a passenger of second class cabin, the Italian Vincenzo Canfora, 60 years old.

"The same, when in New York, was recovered, on public charge, at the Bellevue Hospital, where a foot was amputated to him. He was deported nine months ago by the Italian Consulate as a destitute.

"He has no relatives here who can support him, while at Naples Canfora has brothers and sisters with means and can take good care of him.

"Very Respectfully, Joseph Ruggio."

Upon his arrival, therefore, he was detained, the usual proceedings for an investigation followed, and an order for his deportation was issued on the ground that he was liable to become a public charge. He has about $200 deposited in a bank. Most of his children are adults, earning good wages. They are able and willing to support him, and they offer to give a surety company bond, in any amount required, to indemnify against his becoming a public charge. The facts in regard to the charge in Ruggio's letter that he was a charity patient at Bellevue Hospital when his foot was amputated, to which much weight was given by the inspector who reported in favor of deportation, were these: About seven months passed after the gangrene developed in his foot before the amputation. During that period he had expended about $1,500 for medical services in an effort to be cured. Most of his children at that time were not self-supporting. The doctor advised that he should go to a hospital for the amputation. He went to Bellevue Hospital, and felt that under the circumstances he

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was justified in asking them to perform the amputation without compensation. The hospital authorities did so, and have never asked for compensation, or complained that it was not paid. The facts in regard to the charge in Ruggio's letter that he was deported by the Italian consul as a destitute are these: Canfora had an old friend who was an assistant in the Italian consul's office. Canfora had frequently made him presents of books which he had bound. When the friend learned that Canfora was about to go to Italy, he offered to get him transportation. Canfora at first refused, stating that he could purchase his ticket. But his friend urged him to accept it as a gift to a friend, and in recognition of Canfora's previous gifts to him. Canfora thereupon accepted the ticket, and went to Italy on it.

The alien's counsel urges that the fact that the alien had established a residence and lived for 16 years in this country makes the law inapplicable to him, and cites rule 4 of the rules relating to the exclusion of aliens, prescribed by the Department of Commerce and Labor, which states that the provisions of the immigration act do not apply to aliens who have once been duly admitted to the United States. That rule was adopted under the earlier immigration acts. Those acts described the persons who are liable to deportation as immigrants, and the courts in construing those acts held that the term "immigrants" only applied to aliens on their first arrival in this country, and did not apply to, aliens who had been duly admitted to the country and had established a residence here, and who had left the country for a temporary absence. In 1903 Congress amended the immigration acts (Act March 3, 1903, c. 1012, 32 Stat. 1213), and substituted the term "aliens" for the term "immigrants." The courts thereupon held that under such amendments the law applied to all aliens whether they had previously entered this country or not. Taylor v. United States, 152 Fed. 1, 81 C. C. A. 197; Ex parte Hoffman (Matter of La Pina), U. S. Cir. Ct. of Appeals for the Second Circuit, 179 Fed. 839, 103 C. C. A. 327. The provisions of rule 4 have remained unchanged, but the rules, of course, are subordinate to the acts of Congress, and the provision of that rule which is relied on has been superseded by the later immigration acts.

I consider that, if this order of deportation is carried out, it will be an act of cruel injustice. If this alien had remained in this country, he probably never would have been molested. If he had not lost his leg, he probably would not have been detained on his return. No offense is charged against him. It is proposed to deport him because he has suffered a pitiable misfortune, and notwithstanding a proposition to give a satisfactory bond, which would appear to be a complete protection to the government from his becoming a public charge. But the immigration acts confer exclusive power upon the immigration officials to determine such questions, and the courts, so long as the procedure prescribed by the immigration acts and the rules established for their administration is substantially followed, have under the decisions of the United States Supreme Court no jurisdiction to interfere. I am therefore compelled to dismiss this writ. But I desire to express the hope that the immigration authorities will reconsider this case. I cannot believe that on a candid reconsideration of this record

this man, who is charged with no offense, will be sent away, because he has suffered a grievous calamity and has been denounced by a malicious enemy, to pass his last years and to die in a distant land, far from his wife and children, and from the home in this country in which he has lived a blameless life for so many years.